No. 32,650

R. A. Hyland, *Appellant*, v. Bessie Jennings, *Appellee*.

(54 P. 2d 924)

Opinion filed March 7, 1936. 

*J. R. Hyland* and *Herbert Hyland*, both of Washington, for the appellant.

*A. C. Bokelman*, of Washington, and *John C. Hartigan*, of Fairbury, Neb., for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover money. Judgment was for defendant. Plaintiff appeals.

Plaintiff and defendant were stockholders in the Hollenberg State Bank. Some time prior to December 31, 1931, the bank had acquired title to 520 acres of land. It became necessary in order to comply with orders of the banking department that this land be taken from the assets of the bank. For that purpose some of the stockholders of the bank, including plaintiff, entered into a contract. Pursuant to the terms of that contract plaintiff and one Patterson advanced $22,000 to the bank in order that this real estate might be taken out of the assets of the bank. This contract was as follows:

"Whereas, The Hollenberg State Bank, of Hollenberg, Kan., is the owner of the following described real estate, to wit: . . .

"And, whereas, a part of said land is mortgaged to Trevett, Mattis & Baker Co., of Beatrice, Neb., for $4,000, and R. A. Hyland has advanced the sum of $19,000, and $1,750 accrued interest to December 31, 1931, and George Patterson has advanced the sum of $1,000, and $250 accrued interest to December 31, 1931, in charging said land out of the assets of said bank.

"It is hereby agreed by and between the undersigned stockholders of said bank, that a warranty deed shall be executed and delivered to each stockholder for his undivided interest in said land in such proportion thereof as the shares owned by him or her bears to the 100 shares of the capital stock of said bank, subject, however, to the $4,000 mortgage held by Trevett, Mattis & Baker Co.

"In consideration thereof, said stockholders hereby agree to make settle-

ment with R. A. Hyland and George Patterson in such proportion thereof as the shares of stock owned by him or her bears to the 100 shares of the capital stock of said bank.

"It is further agreed by and between the undersigned stockholders of said bank that the above-described land shall be sold at any time the majority of the stockholders of said bank shall agree upon and at a price agreed upon by them.

"It is further agreed by and between the undersigned stockholders of said bank, that deeds shall be prepared and executed on or before January 4, 1932, or as soon thereafter as can be done, at which time each stockholder of said bank shall make settlement and receive deed as aforesaid.

"In case such settlement be made by note, interest to commence January 1, 1932."

On May 4, 1933, a special meeting of the board of directors of the bank was called for the purpose of making final disposition of the land. There was an indebtedness against this land of $27,600. At this meeting it was determined by the stockholders to sell the land at $25 an acre or $13,000 with the purchaser assuming the mortgage, thus leaving a deficit of $14,600 or $146 per share. The land was conveyed to R. A. Hyland and Florence Hyland. There were 100 shares of stock in the bank. Defendant owned five of them—hence the share of defendant in the deficit was $730. Other stockholders who had signed the contract made settlement of their proportionate shares under it. In the meantime any interest Patterson had in the land was assigned by him to Hyland, so this action was brought by Hyland. Defendant refused to make any settlement. This action followed.

The petition alleged facts about as they have been set out here. The evidence of plaintiff sustained the allegations of the petition. At the close of the plaintiff's evidence defendant interposed a demurrer to it. This demurrer was sustained. The appeal is from that order.

The position of defendant is that under the terms of the contract she was to receive an undivided one-twentieth interest in the land and in return was to pay $1,300; that the interest in the land never was conveyed to her, hence she cannot be held liable under the contract. She further argues that the contract is void for want of mutuality, since it appears from an examination of it that there was no obligation arising from the contract that defendant could enforce against plaintiff.

This position of defendant makes it imperative that we examine the contract.

It will be noted that the first provision of the contract was a statement that the bank owned the land. The contract then stated that one Patterson and R. A. Hyland had advanced the sum of $22,000 necessary in charging this land out of the assets of the bank. The contract then provided that a warranty deed should be executed to each stockholder for an undivided interest in the land in such proportion as the shares of stock owned by the stockholder bore to the 100 shares of the capital stock of the bank.

The contract then provided that the stockholders agreed to make settlement with Patterson and Hyland in such proportion as the shares of stock owned by the stockholder bears to the 100 shares of capital stock of the bank.

The contract then provided that the land should be sold at any time and at a price a majority of the stockholders should agree upon.

It will be noted the record discloses that the land was sold at a price and at a time that was agreed upon by all the stockholders except defendant. The only detail of the contract that was not carried out was that instead of the bank conveying the land to the stockholders and then the stockholders conveying it to the final purchaser it was conveyed directly by the bank to the final purchaser. We fail to see where defendant was injured by that circumstance. We will examine the facts and circumstances surrounding the execution of a contract when a question is raised as to its meaning or interpretation.

It will be noted that following the provision in the contract about the execution of the deed appeared the provision about the stockholders making settlement with Hyland and Patterson.

When this provision is examined in connection with other parts of the contract it becomes plain that it was the intention of all the parties that the men who advanced the money should be reimbursed after the land was sold for what they would be out of pocket on account of the money they advanced. It makes no difference that the land was sold to one of the stockholders. Defendant agreed that it should be sold at a time and at a price to be agreed upon by a majority of the stockholders. There is no hint of fraud in this record. This being the case, we conclude that defendant took too narrow a view of the contract when she argued that it should be treated as a contract for the sale of real property which plaintiff did not own. In reality it was a contract wherein defendant agreed to pay plaintiff her share of what he would lose on account of ad-

vancing money of which defendant, along with others, received the benefit. Since we have reached this conclusion, it follows that the trial court erred in sustaining the demurrer of defendant to the evidence of plaintiff.

The judgment of the trial court is reversed with directions to grant plaintiff a new trial.